**MAYALL HURLEY**
**A Professional Corporation**
**2453 Grand Canal Boulevard**
**Stockton, California 95207**
Telephone: (209) 477-3833
Facsimile: (209) 473-4818
**NICHOLAS F. SCARDIGLI**
CA State Bar No. 249947

**Attorneys for Plaintiff DORCAS-COTHY KABASELE**

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORCAS-COTHY KABASELE,<br><br>　　Plaintiff,<br><br>vs.<br><br>ULTA SALON, COSMETICS & FRAGRANCE, INC.; JANELLE WRIGHT; and DOES 1-10, inclusive,<br><br>　　Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES FOR**<br><br>1. **HARASSMENT**<br>2. **RETALIATION**<br>3. **FAILURE TO PREVENT HARASSMENT AND RETALIATION**<br><br>**JURY TRIAL DEMANDED** |

　　Plaintiff Dorcas-Cothy Kabasele ("Kabasele") brings this action against Defendants Ulta Salon, Cosmetics & Fragrance, Inc. ("Ulta"); Janelle Wright ("Wright"); and Does 1-10, inclusive as referred to herein, for compensatory damages, punitive damages, injunctive and declaratory relief, interest, costs, and attorneys' fees resulting from the defendants' unlawful and tortious conduct. As grounds Kabasele therefore alleges:

## **PARTIES**

　　1.　　Kabasele was at all times relevant herein an individual; employed in Contra Costa County, California; and an "employee" as defined by Gov. Code § 12926(c). Kabasele currently resides in Oregon.

///

///

2. Ulta is and was at all times relevant herein a Delaware corporation with headquarters in Illinois, and an "employer" as defined by Gov. Code §§ 12926(d) and 12940(j)(4)(A).

3. Wright is and/or was at all times relevant herein an individual; employed in Contra Costa County, California; and an "supervisor" as defined by Gov. Code § 12926(t). Wright currently resides in California.

4. Ulta and Does 1-10 are referred to collectively herein as "Defendants."

5. Kabasele is not aware of the true names and capacities of the defendants sued herein as Does 1-10, whether individual, corporate, associate, or otherwise, and, therefore, sues such defendants by these fictitious names. Kabasele will amend this complaint to allege their true names and capacities when ascertained. Kabasele is informed and believes, and on that basis alleges, that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged and that the injuries and damages herein alleged were legally caused by such defendants. Unless otherwise indicated, each defendant was acting within the course and scope of said agency and/or employment, with the knowledge and/or consent of said co-defendant.

## JURISDICTION AND VENUE

6. This Court has original jurisdiction of this action pursuant to 28 U.S.C. §§ 1332 because it is a civil action between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. Venue is proper in the United States District Court for the Northern District of California under 28 U.S.C. § 1391(b) because the events and omissions giving rise to each of the claims set forth in this Complaint occurred in this District.

## JURY TRIAL DEMAND

8. Kabasele hereby demands a jury trial.

## GENERAL ALLEGATIONS

9. Kabasele, a black female, was employed by Ulta at its retail store in San Ramon, California, from June 5, 2019, until her unlawful termination on March 23, 2021.

///

10. In December 2019, a customer referred to Kabasele as "black and lazy" to Kabasele's manager, Wright.

11. Kabasele was offended.

12. Kabasele complained to Wright, who told Kabasele "to move on" because "it didn't matter" and it "happens all the time."

13. Wright was employed by Ulta and had the authority, in the interest of Ulta, to assign, reward, and discipline other employees of Ulta. The exercise of that authority was not of a merely routine or clerical nature, but required the use of independent judgement.

14. Wright was employed by Ulta and had the responsibility, in the interest of Ulta, to direct other employees of Ulta and to adjust their grievances. The exercise of that responsibility was not of a merely routine or clerical nature, but required the use of independent judgement.

15. Over the following months, Kabasele witnessed Wright racially profiling black customers in the store.

16. Wright informed Kabasele and other co-workers that her husband is black, such that she was very "familiar" and comfortable with African-American culture. Wright made statements to this effect to Kabasele including when Kabasele complained to her about racially profiling black customers.

17. Throughout 2020, Wright made racially offensive comments to Kabasele.

18. Wright told Kabasele that customers did not expect such a great customer-service voice to come out of Kabasele's "black ass."

19. Wright made racially offensive comments about Kabasele's boyfriend, who is black, being a criminal.

20. Wright made racially offensive comments about and Kabasele's siblings, who are black, being criminals.

21. Wright made racially offensive comments to Kabasele in regards to black customers and customers who appeared to be of African descent, including by stating that Kabasele must be related to them because she is black and referring to Kabasele and such customers as "Cassie and her people."

22. Kabasele complained to Ulta's management on several occasions about Wright's race harassment and the hostile work environment that she created at the store, including in writing in December 2020. Ulta was aware in December 2020 that Kabasele complained of race harassment at the store.

23. In retaliation for Kabasele's complaints of unlawful harassment, Ulta issued Kabasele a written "Final Warning" in January 2021 for acting in accordance with Ulta's written employment policies regarding shoplifters.

24. Ulta's written policies regarding shoplifters included the following written policy: "In an effort to maintain proper confidentially [sic] from a business perspective, any associate should refrain from talking about, or discussing external theft activity that is impacting the store, district, or region. Instead, collect as much information as possible while staying inside the store, for example: - Shoplifter information: physical characteristics and clothing description. - Vehicle information: make, model, color and license plate. - Direction of travel (include vehicle, on foot, bicycle, etc.)."

25. The "Final Warning" intentionally misrepresented that Kabasele violated Ulta's policy, in retaliation for Kabasele's complaints of unlawful harassment.

26. When Kabasele attempted to transfer to another store, Ulta used the "Final Warning" as reason to deny the transfer.

27. This reason was a pretext to hide the real reason for the denial, namely, retaliation for Kabasele's complaints of unlawful harassment.

28. Ulta terminated Kabasele's employment on March 23, 2021.

29. The termination was in further and final retaliation for Kabasele's complaints of unlawful harassment.

30. Aware of the unlawful harassment and retaliation through its high-level management, Ulta failed to take all reasonably steps necessary to prevent the harassment and retaliation from occurring.

/ / /

/ / /

31. On August 24, 2021, Kabasele filed a complaint with the Department of Fair Employment & Housing ("DFEH") against Ulta and Wright based on the unlawful conduct described above.

32. That same day, the DFEH issued Kabasele a right-to-sue notice. Kabasele served Ulta with her DFEH complaint and right-to-sue notice that same day by certified mail.

**FIRST CAUSE OF ACTION**
**VIOLATION OF GOV. CODE § 12940(j)**
**(Harassment)**
**Against Defendants and Wright**

33. Kabasele hereby realleges and incorporates by reference each and every allegation set forth above as though fully set forth herein.

34. FEHA prohibits an employer from harassing an employee because of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, or military and veteran status. Gov. Code § 12940(j). An employer is liable for such harassment if it, or its agents or supervisors, knows or should have known of the conduct and fails to take immediate and appropriate corrective action.

35. Nevertheless, as set forth above, Defendants and their agents and supervisors knew and should have known of Wright's unlawful harassment and failed to take immediate and appropriate corrective action.

36. As a result, Kabasele has been injured.

37. Defendants' and Wright's actions towards Kabasele were oppressive, fraudulent, and/or malicious, thereby justifying an award of punitive damages against them.

38. Wherefore, Kabasele seeks relief as set forth below.

**SECOND CAUSE OF ACTION**
**VIOLATION OF GOVERNMENT CODE § 12940(h)**
**(Retaliation)**
**Against Defendants**

39. Kabasele hereby realleges and incorporates by reference each and every allegation set forth above as though fully set forth herein.

40. FEHA prohibits an employer from retaliating against an employee because the employee has opposed any practices forbidden under FEHA. Gov. Code § 12940(h).

41. Nevertheless, as set forth above, Defendants retaliated against Kabasele in violation of FEHA.

42. As a result, Kabasele has been injured.

43. Defendants' actions towards Kabasele were oppressive, fraudulent, and/or malicious, thereby justifying an award of punitive damages against them.

44. Wherefore, Kabasele seeks relief as set forth below.

**THIRD CAUSE OF ACTION**
**VIOLATION OF GOVERNMENT CODE §§ 12940(j)(1), (k)**
**(Failure to Prevent Harassment and Retaliation)**
**Against Defendants**

45. Kabasele hereby realleges and incorporates by reference each and every allegation set forth above as though fully set forth herein.

46. FEHA requires an employer to take all reasonable steps necessary to prevent discrimination, harassment, and retaliation from occurring. Gov. Code §§ 12940(j)(1), (k).

47. Nevertheless, as set forth above, Defendants failed to prevent the harassment and retaliation against Kabasele, in violation of FEHA.

48. As a result, Kabasele has been injured.

49. Defendants' actions towards Kabasele were oppressive, fraudulent, and/or malicious, thereby justifying an award of punitive damages against them.

50. Wherefore, Kabasele seeks relief as set forth below.

**PRAYER FOR RELIEF**

WHEREFORE, the following relief is sought:

1. For compensatory, special, and general damages;
2. For injunctive and declaratory relief pursuant to Gov. Code § 12965, including, but not limited to, a cease-and-desist order requiring Defendants to halt their discriminatory, harassing, and retaliatory practices; an order requiring Defendants to conduct training for all its employees, supervisors, and management on the

requirements of the FEHA; and an order requiring Defendants to develop and promulgate an effective policy for preventing discrimination, harassment, and retaliation;

3. For punitive and/or exemplary damages;

4. For statutory attorneys' fees and costs including but not limited to those available under Gov. Code § 12965(b);

5. For prejudgment and post-judgment interest; and

6. For such other and further relief as the court deems proper.

**DATED:** September 23, 2021            **MAYALL HURLEY P.C.**

By _____
NICHOLAS F. SCARDIGLI
Attorneys for Plaintiff
DORCAS-COTHY KABASELE