UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORCAS-COTHY KABASELE,<br><br>          Plaintiff,<br><br>    v.<br><br>ULTA SALON, COSMETICS & FRAGRANCE, INC.,<br><br>          Defendant. | Case No. 21-cv-07458-MMC (TSH)<br><br>**DISCOVERY ORDER**<br>Re: Dkt. No. 46 |

Defendant Ulta Salon, Cosmetics & Fragrance, Inc. ("Ulta") and non-party Jeff Childs move for a protective order barring Childs' deposition pursuant to the apex doctrine. ECF No. 46. Plaintiff Dorcas-Cothy Kabasele filed an opposition, ECF No. 50, and the moving parties filed a reply. ECF No. 51. The Court grants the motion.

Kabasele is suing Ulta for harassment, retaliation and failure to prevent harassment and retaliation. ECF No. 1. Ulta, in case you haven't heard of it, is huge. It operates more than 1,300 stores and employs about 40,000 employees in the United States. Schelkopf Decl., ¶ 5 (ECF No. 46). It has approximately 165 stores in California alone. *Id*.

The genesis of the current discovery dispute is an email string attached as Exhibit A to the Sonya Schelkopf Declaration. On January 20, 2021 Kabasele emailed Jeff Childs, who at the time was Ulta's Chief Human Resources Officer, to complain about how her report of sexual harassment and racial discrimination had been handled by the company and to complain about a warning she had received. On January 21, Childs forwarded the email to Devon Byrne, stating: "I know we corresponded on this but just to make sure, is someone acknowledging that I received and the team will follow up?" Note that this email implies the existence of a previous email between Childs and Byrne ("I know we corresponded on this . . .") – that's going to be important

later. Byrne responded, "Hi, yes, we are. Thanks!" Byrne then forwarded that exchange to Holly Moorehouse, who replied and then forwarded the chain to Schelkopf, who sent it to Abigail Zieman. The Schelkopf Declaration identifies these individuals and makes clear that this was an email thread proceeding down the chain of command to Zieman, who conducted the investigation into Kabasele's complaint under Schelkopf's supervision. Schelkopf Decl. ¶¶ 9-11.

Paragraph 11 of the Schelkopf Declaration then states: "After Childs forwarded the email to the Vice President of Human Resources, he had no further involvement in Plaintiff's complaint, the investigation into Plaintiff's complaint, or her employment at Ulta. Ms. Zieman, the Associate Relations Specialist, conducted the investigation under my supervision. In January 2021, I also contacted Plaintiff to gather additional information pertaining to her complaint and concerns. Childs did not investigate Plaintiff's complaint or oversee any investigation of Plaintiff's complaint. The results of the investigation also were not shared with Childs, and Childs was not consulted during the investigation."

Both sides agree that Childs is an apex witness. *See* ECF No. 50 at 6 ("For purposes of this opposition, Plaintiff does not dispute that Mr. Childs, now retired, was a high-level executive of Defendant, or an 'apex' employee."). Indeed, it would be hard to deny that the former Chief HR officer of a company with 40,000 U.S.-based employees is an apex witness. And Schelkopf's declaration seems to close the door on any basis to depose him.

Nonetheless, Kabasele offers three reasons why his deposition is warranted. First, she says that Ulta's responses to her requests for admission deny that Kabasele made any complaints of racial harassment, racial discrimination, racial profiling or racist comments during her employment. She argues that the existence of her January 20 email to Childs conclusively disproves those denials. She also argues that Ulta's initial disclosures failed to identify several witnesses who Ulta knew had discoverable information.

What this has to do with the need to depose Childs is left carefully unexplained. If "[t]he existence of Plaintiff's January 20, 202[1] emailed complaint to Mr. Childs, Defendant's Chief Human Resources Officer at the time, conclusively establish[es] that those denials are false," (ECF No. 50 at 7), why is it necessary to depose Childs? In any event, a review of Ulta's

responses to Kabasele's requests for admission (Scardigli Decl., Ex. D, ECF No. 50-1) shows that in response to RFAs 3, 4, 5 and 6, Ulta admitted that Kabasele made complaints but disagreed with how the RFAs characterized them.  The Court interprets these answers as Ulta admitting the complaints were made but not agreeing that the complained-of conducted constituted, for example, racial discrimination.  Against that background, the January 20 email, which is really about how Kabasele's complaints were handled and a warning she received, does not seem to falsify the RFA responses.  As for the initial disclosures, it's true that they're pretty bare bones, but since Ulta did not list Childs in them as a potential witness, the initial disclosures are not inconsistent with the company's attempt to block his deposition.

Second, Kabasele points to Schelkopf's deposition testimony.  She argues that the testimony on page 58 at lines 2-14 contradicts Schelkopf's declaration submitted in support of this apex motion and that only Childs can clear up the confusion.  Here is the testimony (Scardigli Decl., Ex. A):

> Q. Do you know whether Jeff Childs ever inquired into the status or results of the investigation after he forwarded Cassie's January 20th email?
>
> A. Jeff Childs did follow up with one of his direct reports -- well, not direct, but one of his reports as to if we had made contact with the associate and were taking care of her concerns.
>
> Q. Was that by email?
>
> A. It wasn't to me specifically, but yes, it was something on email.
>
> Q. Do you know whether he ever made any other follow-up in regard to the investigation?
>
> A. I don't know that. I don't know.

This argument does not withstand scrutiny either.  Remember what the Court pointed out above:  The email string in Exhibit A to the Schelkopf Declaration implies the existence of a prior email between Childs and Byrne about Kabasele's complaint to Childs.  In other words, Exhibit A to the Schelkopf Declaration *is* the further inquiry that Schelkopf described in her deposition.  And when Schelkopf stated in paragraph 11 of her declaration that Childs had no further involvement in Kabasele's complaint after he forwarded the email to Byrne, she was referring to the forward

3

that is depicted in Exhibit A, as made clear by the citation to Exhibit A in paragraph 10. Kabasele is therefore mistaken in arguing that Schelkopf has provided contradictory testimony concerning whether Childs had any involvement beyond forwarding her complaint.

Third, Kabasele argues that on page 12 of her deposition, Schelkopf testified that it was unprecedented for Childs to forward a complaint to her team, necessitating his testimony about why he did a unique thing in this case. But that argument turns out to be unfounded too. In response to the question "Have you ever received concerns or complaints from an employee that Jeff Childs forwarded to you or your team to investigate?" Schelkopf testified: "I can't be – I mean, we received documentation from associates that may have gone through Jeff Childs previously, possibly, but never directly from Jeff. It would have been in this same – if we did, it would have been in this same type of format. It would have gone down the chain of command." So, while Schelkopf did say that she and her team "never" received a complaint "directly" from Childs, she also made clear that didn't happen in this case either. Schelkopf rejected the premise of the question and characterized this email chain as something forwarded down the chain of command, which she did not say was a unique occurrence.

Having conceded Childs' apex status, Kabasele has not offered any good reason to depose him. Ulta and Childs' motion for a protective order barring his deposition is therefore **GRANTED**.

**IT IS SO ORDERED.**

Dated: December 20, 2022

THOMAS S. HIXSON
United States Magistrate Judge

4